1

2                    UNITED STATES DISTRICT COURT

3                   CENTRAL DISTRICT OF CALIFORNIA
                         WESTERN DIVISION

4

5
       NADINE HAYS,                    )
6                                      )
                                       )
7           PLAINTIFF,                 )
                                       )
8           VS.                        )  CASE CV 12-10219-DMG(PJWX)
                                       )
9     LOS ANGELES POLICE DEPARTMENT,)
      ET AL.,                          )  LOS ANGELES, CALIFORNIA
10                                     )
            DEFENDANT.                 )  MARCH 31, 2014
11                                     )
      _____)

12

13

14                         TELEPHONIC HEARING
                BEFORE THE HONORABLE PATRICK J. WALSH
15                 UNITED STATES MAGISTRATE JUDGE

16

17    APPEARANCES:              SEE NEXT PAGE

18    COURT REPORTER:           RECORDED; XTR

19    COURTROOM DEPUTY:         JACOB YERKE

20    TRANSCRIBER:              DOROTHY BABYKIN
                                COURTHOUSE SERVICES
21                              1218 VALEBROOK PLACE
                                GLENDORA, CALIFORNIA  91740
22                              (626) 963-0566

23

24

25    PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
      TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

```
 1   APPEARANCES:  (CONTINUED)
     FOR THE PLAINTIFF:        NADINE HAYS
 2                            PRO SE

 3
     FOR ALL DEFENDANTS        LOS ANGELES CITY ATTORNEY'S OFFICE
 4   EXCEPT ROBERT TAYLOR:     BY:  ELIZABETH L. GREENWOOD
                                    DEPUTY CITY ATTORNEY
 5                            CITY HALL EAST
                              200 NORTH MAIN STREET
 6                            6TH FLOOR
                              LOS ANGELES, CALIFORNIA  90012
 7
     FOR ROBERT TAYLOR:        GORDON & REES LLP
 8                            BY:  LISA K. GARNER
                                   ATTORNEY AT LAW
 9                            633 WEST FIFTH STREET
                              52ND FLOOR
10                            LOS ANGELES, CALIFORNIA  90071

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                              I N D E X
    CASE NO. CV 12-10219-DMG(PJWX)              MARCH 31, 2014
2
    PROCEEDINGS:   PLAINTIFF'S REQUEST FOR COURT ORDER FOR
3                  PRODUCTION AND PLAINTIFF'S EX PARTE APPLICATION
                   FOR MEDIATION
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1          LOS ANGELES, CALIFORNIA; MONDAY, MARCH 31, 2014

2          THE CLERK:  CALLING CASE NUMBER CV 12-10219-DMG(PJW),

3    NADINE HAYS VERSUS THE LOS ANGELES POLICE DEPARTMENT, ET AL.

4          COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

5    RECORD.

6          MS. GREENWOOD:  ELIZABETH --

7          MS. HAYS:  NADINE --

8          MS. GREENWOOD:  I'M SORRY.  GO AHEAD.

9          MS. HAYS:  NADINE HAYS, PLAINTIFF.

10         MS. GREENWOOD:  ELIZABETH GREENWOOD FOR DEFENSE.

11         MS. GARNER:  AND LISA GARNER FOR DEFENDANT ROBERT

12   TAYLOR.

13         THE COURT:  OKAY, COUNSEL AND MS. HAYS, THANKS FOR

14   GETTING ON THE PHONE WITH ME.

15         I HAVE SOME PLEADINGS THAT WERE FILED ON MARCH 20TH

16   BY THE PLAINTIFF.

17         FIRST, THE EX PARTE APPLICATION FOR MEDIATION,

18   MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATION OF NADINE

19   HAYS AND PROPOSED ORDER.

20         THE SECOND, PLAINTIFF'S REQUEST TO THE COURT TO ORDER

21   PRODUCTION OF PERTINENT INFORMATION THAT IS DISCOVERABLE IN

22   ORDER TO PREPARE FOR TRIAL.

23         I'M GOING TO GO WITH THE EX PARTE APPLICATION FIRST.

24         AND PURSUANT TO LOCAL RULE 719, MS. HAYS SAYS SHE'S

25   GOING TO -- SHE'S FILING AN EX PARTE ORDER DIRECTING ELIZABETH

1   GREENWOOD TO FULLY COOPERATE AND PRODUCE REQUESTED DOCUMENTS,

2   RECORDINGS, AND REQUESTED MEETINGS WITH THE INTENTION OF EITHER

3   DISMISSAL OF ALL OR SOME OF THE DEFENDANTS' SETTLEMENTS

4   (INAUDIBLE) COOPERATIVE ACTION, WHICH WILL ALLOW PLAINTIFF TO

5   HAVE DISCOVERY SHE IS BY LAW ENTITLED TO.

6           OKAY.  SO, THE FIRST THING ON PAGE 3 IS RECORDINGS

7   FROM THE METRO DETENTION CENTER.  WHILE SHE WAS INCARCERATED

8   SHE SUFFERED A NERVOUS BREAKDOWN, AN EMOTIONAL BREAKDOWN.

9   WHILE SHE WAS IN A HOLDING CELL SHE WAS ABLE TO MAKE MULTIPLE

10  CALLS TO PLAINTIFF'S HUSBAND JOHN -- JOHN HAYS.

11          AND SHE'S COMPLAINING THAT GTL LINK CORPORATION WAS

12  NOT MAKING THOSE CALLS AVAILABLE.  SHE THINKS THERE'S A

13  CONSPIRACY IN THAT THE GOVERNMENT GOT TO THE GTL.  AND THEY

14  TOLD GTL TO DESTROY THE RECORDINGS, WHICH IS WHAT GTL IS

15  TELLING THEM.

16          MS. HAYS, THERE'S NOT ANY EVIDENCE HERE TO SUPPORT

17  THAT AT THIS TIME.  YOUR MOTION THAT -- IT APPEARS --

18          MS. HAYS:  YOUR HONOR --

19          THE COURT:  THERE --

20          MS. HAYS:  -- THERE IS EVIDENCE.

21          THE COURT:  WOULD YOU WAIT A SECOND, MS. HAYS.

22  HERE'S WHAT WE'RE GOING TO DO.

23          I'M IN CHARGE.  I WILL TELL YOU WHEN YOU CAN SPEAK.

24  IF YOU'RE GOING TO BREAK THAT RULE, WE'RE GOING TO END THIS.

25  AND I'M JUST GOING TO DENY THE MOTIONS.

1              IS THAT CLEAR?

2              MS. HAYS:  YES, SIR.

3              THE COURT:  ALL RIGHT.  I CAN'T HAVE FOUR PEOPLE ON A

4    TELEPHONE AND EVERYBODY JUST TALKING WHEN THEY WANT TO.  I'M

5    RECORDING THIS.  IT'S PART OF THE RECORD.  YOU CAN GET A

6    TRANSCRIPT FROM IT WHEN WE'RE DONE.  BUT IF FOUR OF US ARE

7    TALKING, THERE'S NO POINT IN GETTING A TRANSCRIPT BECAUSE THE

8    ENTIRE TRANSCRIPT SAYS "INAUDIBLE."  OKAY.

9              ALL RIGHT.  NOW, I'M NOT EVEN WORRIED ABOUT THE

10   EVIDENCE RIGHT NOW BECAUSE YOU'RE GOING AGAINST THE WRONG

11   PARTY.  THE CITY DOESN'T HAVE THE RECORDINGS OF THESE CALLS.

12   GTL DOES.  YOU'VE GOT TO FILE A MOTION TO COMPEL THEM TO

13   PRODUCE.  AND IN DOING THAT YOU HAVE TO PROVIDE ADMISSIBLE

14   EVIDENCE THAT THESE -- THAT THEY HAVE THESE RECORDINGS.

15             DO YOU UNDERSTAND THAT?

16             GO AHEAD, MS. HAYS.

17             MS. HAYS:  YES, YOUR HONOR.

18             THE COURT:  GO AHEAD.  DO YOU -- YOU CAN -- YOU CAN

19   RESPOND NOW.

20             SO, IF YOU WANT TO -- IF YOU WANT TO FORCE GTL TO

21   PRODUCE SOMETHING, YOU HAVE TO FILE A MOTION TO COMPEL GTL TO

22   PRODUCE SOMETHING AND SERVE IT ON GTL.

23             MS. HAYS:  OKAY.

24             THE COURT:  ALL RIGHT.

25             MS. HAYS:  OKAY.

1          THE COURT:  OKAY.  SO, THAT -- AS FAR AS ANYTHING

2     FROM GTL, THAT ISSUE IS RESOLVED, AT LEAST AT THIS TIME.

3          PLAINTIFF HAS REQUESTED VIDEOS IN FRONT OF THE L.A.

4     CITY HALL WHICH SHE IS CERTAIN EXISTS.  AND SHE IS BEING TOLD

5     THERE IS NO VIDEO.

6          OKAY.  IF YOU WANT TO COMPEL THE CITY TO PRODUCE

7     THESE VIDEOS THAT THEY HAVE OR THAT THEY'VE NOW DESTROYED OR

8     WHATEVER, YOU NEED ADMISSIBLE EVIDENCE ESTABLISHING THAT THEY

9     EXIST.  AND THEY'RE WITHHOLDING THEM.

10         RIGHT NOW, WHEN THE LAWYERS TELL ME THAT THE VIDEOS

11    DON'T EXIST, I RELY ON THEIR REPRESENTATIONS.

12         DO YOU UNDERSTAND THAT?

13         (PAUSE IN PROCEEDINGS.)

14         THE COURT:  GO AHEAD, MS. HAYS.

15         MS. HAYS:  YES, YOUR HONOR.

16         I -- WHEN I HAVE ASKED ELIZABETH GREENWOOD IF -- FOR

17    PROOF THAT -- AND THERE'S CONFLICT BETWEEN WHAT I'M GETTING

18    FROM HER AND WHAT I HAVE RECEIVED FROM THE INVESTIGATORS.  THE

19    INVESTIGATORS SAY THE VIDEO EXISTED, BUT THEY'RE -- THE VIDEO

20    WAS NOT FOCUSED IN THE AREA THAT WE ARE INTERESTED IN.

21         SO, I BASICALLY HAVE -- AND I DO -- AND YOU KNOW I

22    RECORD.  I'M NOT RECORDING NOW BECAUSE I CAN GET THIS THROUGH

23    THE COURT WHAT WE ARE DISCUSSING RIGHT NOW.  BUT BECAUSE OF MY

24    DISABILITY, I RECORD SO THAT I CAN REPLAY OVER AND OVER AGAIN

25    FOR COMPREHENSION.  AND I DO HAVE A RECORDING THAT WAS DONE --

1    I BELIEVE, FOR EXAMPLE, MR. GROSSUM, (PHONETIC), WHO WAS

2    INVESTIGATING THE THEFT OF MY PROPERTY IN FRONT OF THE LOS

3    ANGELES CITY HALL.  HE SAID HE LOOKED AT THE VIDEO.  AND IT DID

4    NOT SHOW THE AREA THAT WE WERE INTERESTED IN.

5         SO, TO ME THAT TELLS ME VIDEO EXISTS.  SO, I'M JUST

6    ASKING MS. GREENWOOD SHOW ME THEN THE VIDEO THAT EXISTS THAT

7    WAS DATED ON THAT DATE THAT SHOWED NOTHING WAS THERE.

8         THE COURT:  OKAY.

9         MS. HAYS:  AND --

10        THE COURT:  CAN I STOP YOU FOR A SECOND.

11        MS. GREENWOOD, YOU DON'T HAVE -- THERE'S NO VIDEO,

12   CORRECT?

13        MS. GREENWOOD:  THERE IS NO VIDEO.  CORRECT.

14        THE COURT:  OKAY.

15        WE'RE DONE, MS. HAYS.  I'M -- THIS IS NOT A TRIAL

16   OVER WHETHER THE VIDEO IS THERE.

17        ADMISSIBLE EVIDENCE ESTABLISHING SHE'S NOT TELLING

18   THE TRUTH, I'M GOING TO -- YOU'VE GOT ME ON YOUR SIDE.

19        A PLAINTIFF -- A PRO SE PLAINTIFF'S CERTAINTY THAT

20   THEY HAD VIDEO AND THEY'RE HIDING IT AND EVERYTHING, NO.  WE'RE

21   GOING NOWHERE WITH THAT.  OKAY.  WE -- WE ARE IN THE REALM OF

22   PROOF AND ADMISSIBLE EVIDENCE -- NOT SPECULATION.

23        YOU CANNOT PROCEED BECAUSE YOU HAVE A STRONG BELIEF

24   THAT THE VIDEOS WERE THERE AND THEY DESTROYED THEM OR WHATEVER.

25   I NEED EVIDENCE.

1           MS. HAYS:  I HAVE EVIDENCE, YOUR HONOR.

2           THE COURT:  THEN -- THEN SUBMIT IT.  AND IF IT'S

3    ADMISSIBLE, I'LL CONSIDER IT.  OKAY.  SUBMIT THE ADMISSIBLE

4    EVIDENCE.

5           THE NEXT ONE, YOU WANT -- SO, AT THIS POINT THE

6    EX PARTE APPLICATION ON THAT IS DENIED.

7           PLAINTIFF HAS SUBPOENAED HER MEDICAL RECORDS FROM THE

8    MDC.

9           NOW, IS THIS THE -- THE METROPOLITAN DETENTION

10   CENTER, THAT'S USUALLY THE TERM WE USE FOR THE FEDERAL.

11          WERE YOU AT CENTRAL -- AT CENTRAL JAIL?

12          MS. HAYS:  THE METRO DETENTION CENTER.

13          THE COURT:  ALL RIGHT.  I HAVE NO PROBLEM WITH YOU

14   GETTING YOUR MEDICAL RECORDS THERE.  AND YOU SHOULD BE ENTITLED

15   TO THEM.  ALL RIGHT.

16          MS. HAYS:  I THINK I MAY HAVE THE ANSWER TO THAT

17   BECAUSE THE --

18          THE COURT:  GO AHEAD.

19          MS. HAYS:  -- BECAUSE THE MEDICAL RECORDS -- I GUESS

20   THE WAY I UNDERSTAND IT IS THEY ARE KEPT WITH ALL MEDICAL

21   RECORDS FOR THE CITY OF LOS ANGELES.  SO, IT INCLUDES THE

22   EMPLOYEES OF THE CITY OF LOS ANGELES.  SO, IT'S NOT REALLY EVEN

23   A PART OF THE -- OF THE POLICE DEPARTMENT.  THE POLICE

24   DEPARTMENT IS IN CHARGE OF THE FACILITY, BUT THE MEDICAL

25   RECORDS ARE PART OF THE MEDICAL RECORDS FOR THE CITY.

1          AND BECAUSE IN MY SUBPOENA I NOT ONLY REQUESTED MY

2     MEDICAL RECORDS, BUT I HAD ALSO REQUESTED DOCUMENTATION AS TO

3     WHAT THE PROTOCOL WAS FOR WHEN AN INDIVIDUAL, NUMBER ONE, IS

4     EXPERIENCING A NERVOUS BREAKDOWN.  THEY'VE GOT TO HAVE

5     SOMETHING IN THEIR MEDICAL DEPARTMENT ON HOW THEY DEAL WITH

6     THAT -- WHETHER IT'S CALLING THE PARAMEDICS, HAVE YOU

7     TRANSPORTED TO THE HOSPITAL, OR WHATEVER.

8          BUT THEY'RE -- SO, THEY ARE -- THE PEOPLE THAT HAVE

9     COLLECTED MY MEDICAL RECORDS, I THINK THEY ALREADY HAVE THAT.

10    BUT THEY'RE NOT PRESENTING EVERYTHING UNTIL THEY'VE GATHERED

11    EVERYTHING.

12         AND, SO, I'M WITH THE UNDERSTANDING THAT THEY ARE

13    TRYING TO GET THAT PROTOCOL ON WHAT TO DO WITH A PERSON HAVING

14    A NERVOUS BREAKDOWN AS WELL AS THE PROTOCOL ON WHAT TO DO WHEN

15    A PERSON HAS MEDICAL NEEDS -- MEDICATION REQUIREMENTS.  THE

16    HUSBAND BRINGS IT TO THE JAIL.  AND THEY REFUSE TO ALLOW THE

17    INDIVIDUAL HAVING THE BREAKDOWN TO HAVE THE MEDICATION.

18         THE COURT:  UH-HUM.

19         MS. HAYS:  I MEAN, I JUST NEED TO KNOW IS THAT THEIR

20    NORMAL PROTOCOL, OR IF THEY -- THERE ARE LOTS OF DIFFERENT

21    SCENARIOS.  I'M JUST TRYING TO PUT THE PIECES TOGETHER RIGHT

22    NOW, YOUR HONOR.

23         THE COURT:  ALL RIGHT.  WELL, YOU -- IT APPEARS THAT

24    YOU'VE CHASED DOWN THE GROUP THAT HAS THEM.  THEY'RE WAITING TO

25    ASSEMBLE THEM.  GO GET THE MEDICAL RECORDS.  TAKE A LOOK AT

1  THEM.  AND THEN WE'LL GO FROM THERE.  OKAY.

2           MS. HAYS:  OKAY.

3           THE COURT:  ALL RIGHT.  LET'S GO TO YOUR NEXT

4  REQUEST.  SO, THAT -- THAT IS -- SO, I'M GOING TO DENY ALL THE

5  REQUESTED EX PARTE RELIEF.

6           I WILL DENY THE THIRD WITHOUT PREJUDICE.  AND THAT IF

7  YOU NEED HELP GETTING YOUR MEDICAL RECORDS, WE'LL TALK ABOUT IT

8  THE NEXT TIME WE'RE TOGETHER.  OKAY.

9           MS. HAYS:  OKAY.

10           THE COURT:  ALL RIGHT.  THE NEXT IS PLAINTIFF'S

11  REQUEST OF THE COURT TO ORDER PRODUCTION OF PERTINENT

12  INFORMATION THAT IS DISCOVERABLE IN ORDER TO PREPARE FOR TRIAL.

13           AT PAGE 2 YOU EXPLAIN THAT YOU CAN'T GET THIS

14  IMPORTANT EVIDENCE AND INFORMATION, INCLUDING THE BRADY

15  MATERIAL, AND THAT SHE REFUSES TO PRODUCE IT.

16           PLAINTIFF HAS TRIED TO SUMMARIZE THE ISSUES BELOW.

17           WHEN YOU WERE AT THE L.A. -- WHEN YOU WERE GETTING

18  ARRESTED AT CENTRAL STATION, YOU WERE HAVING A NERVOUS

19  BREAKDOWN.  AND PEOPLE LAUGHED AT YOU.  AND YOU WANT TO GET

20  THEIR NAMES.  AND YOU WANT TO TALK TO THEM AND EXPLAIN TO THEM

21  WHAT THE RAMIFICATIONS OF THEIR CONDUCT DID TO HER WELL-BEING.

22           THAT'S -- THAT'S DENIED.

23           THIS IS NOT A FORUM FOR YOU TO HAVE A SIT-DOWN WITH

24  OFFICERS AND -- AND DO SOME SOUL-SEARCHING WITH THEM AND TALK

25  TO THEM ABOUT THEIR BEHAVIOR.  OKAY.  THIS IS A FEDERAL COURT.

1    THAT SOUNDS MORE LIKE A THERAPY SESSION.  AND WE'RE NOT DOING

2    THAT.

3           THERE'S NO -- THERE'S NOT A SINGLE CASE THAT I'VE

4    EVER HEARD OF OR SEEN WHERE YOU CAN GET THE NAMES OF PEOPLE WHO

5    ARE LAUGHING AT YOU AND SIT THEM DOWN AND TALK WITH THEM OR I

6    COULD ORDER THEM.  OKAY.

7           GO AHEAD, MS. HAYS.  YOU CAN RESPOND TO THAT.

8           (PAUSE IN PROCEEDINGS.)

9           THE COURT:  MS. HAYS.

10          MS. HAYS:  YEAH.

11          THE COURT:  ALL RIGHT.  I UNDERSTAND YOU'RE UPSET,

12   BUT YOU'VE GOT TO UNDERSTAND WHERE WE ARE HERE.

13          HAVE YOU EVER HEARD OF THAT? -- THAT THE COURT ORDERS

14   POLICE OFFICERS TO MEET WITH SOMEONE.  AND SHE TALKED TO THEM

15   ABOUT HOW SHE WAS HARMED BY THEM LAUGHING AT HER.

16          MS. HAYS:  YOUR HONOR, WHEN YOU HAVE A CIVIL SOCIETY,

17   LIKE IN (INAUDIBLE) FAMILY, THAT WHEN THINGS GO WRONG THAT ARE

18   NOT RIGHT, THE ONLY WAY YOU CAN GET IT RIGHT OR TRY TO GET IT

19   RIGHT IS TO BRING WHAT'S WRONG TO THE FOREFRONT.

20          AND I AM LEAVING IT UP TO YOU TO DECIDE WHAT'S FOR

21   THE COURT AND WHAT'S NOT FOR THE COURT.

22          BUT I AS A CITIZEN LOOK AT IT, AND I HAVE A HIGH

23   EXPECTATION FOR OFFICERS OF THE LAW.  I MEAN, THEY HAVE BEEN

24   GIVEN AN INCREDIBLE RESPONSIBILITY.  AND I HAVE RESPECT FOR THE

25   GOOD OFFICERS BECAUSE A LOT OF TIMES THEY HAVE PRESSURES PUT ON

1    THEM THAT LEAVE THEM WITH SOME VERY DIFFICULT DECISIONS THAT

2    HAVE TO BE MADE.

3           BUT WHEN OFFICERS DO THINGS THAT ARE NOT APPROPRIATE,

4    IT LEADS ME TO BELIEVE THAT THIS TYPE OF CONDUCT IS ACCEPTABLE

5    WITHIN THE DEPARTMENT.

6           AND IF NOTHING ELSE, I AS A CITIZEN WANT TO LET THESE

7    OFFICERS KNOW THAT THAT IS NOT ACCEPTABLE CONDUCT TO THE

8    PUBLIC.

9           THE COURT:  WHY DON'T YOU WRITE THEM A LETTER IN CARE

10    OF THE POLICE DEPARTMENT.  AND, PERHAPS, THEY'RE GOING TO KNOW.

11    BUT, NO, THIS IS NOT -- THIS IS THE DEAL.

12           YOU BROUGHT A CLAIM ALLEGING A VIOLATION OF YOUR

13    CONSTITUTIONAL RIGHTS.  OKAY.

14           MS. HAYS:  OKAY.

15           THE COURT:  WITH THE FARTHEST STRETCH OF MY

16    IMAGINATION, I DO NOT BELIEVE THAT LAUGHING AT SOMEONE IS A

17    VIOLATION OF THEIR CONSTITUTIONAL RIGHTS.

18           MS. HAYS:  OKAY.

19           THE COURT:  EVEN WHEN THEY'RE IN A SOMEWHAT DISABLED

20    DIMINISHED CAPACITY AS THEY'RE SUFFERING THROUGH SOME EMOTIONAL

21    PROBLEMS BECAUSE OF THE ARREST.  I DON'T KNOW OF ANY HOLDING

22    THAT SIMPLY LAUGHING AT SOMEBODY IS A VIOLATION.  IN FACT, THE

23    REASON I DON'T KNOW OF ANY HOLDING IS BECAUSE I DON'T KNOW

24    ANYBODY WHO HAS EVER BROUGHT A CLAIM ABOUT THAT.

25           I WILL TELL YOU THIS.  BEING CRUDE AND SAYING BAD

14

```
1   WORDS TO PEOPLE AND SHOUTING AT PEOPLE AND SAYING, YOU KNOW,

2   THINGS THAT ARE REALLY UNPLEASANT, I KNOW THAT'S NOT A

3   VIOLATION OF THE CONSTITUTION BECAUSE THE NINTH CIRCUIT AND THE

4   OTHER COURTS HAVE HELD THAT.

5           NOW, AS FAR AS LAUGHING AT SOMEBODY, I'VE NEVER SEEN

6   A CASE ON THAT.  BUT I FEEL COMFORTABLE TELLING YOU THAT

7   THERE'S NO WAY THAT YOU COULD BRING A CONSTITUTIONAL CLAIM

8   AGAINST THE OFFICERS FOR LAUGHING.  OKAY.

9           MS. HAYS:  WHAT ABOUT --

10          YOUR HONOR --

11          THE COURT:  YES.

12          MS. HAYS: -- THIS -- THIS CASE GOES BEYOND JUST

13  CONSTITUTIONAL RIGHTS.

14          THE COURT:  OKAY.

15          MS. HAYS:  THIS CASE, I DID FILE THE CLAIM

16  (INAUDIBLE) IN TIME.  SO, IF YOU LOOK AT THE ORIGINAL COMPLAINT

17  AND LOOK AT ALL OF THE ISSUES THAT ARE BEING PRESENTED WITH

18  THIS LAWSUIT, IT'S -- IT'S BEYOND JUST CONSTITUTIONAL.

19          THE COURT:  SURE.  YOU HAVE SOME STATE TORT --

20          MS. HAYS:  PERHAPS --

21          THE COURT:  -- CLAIMS.

22          MS. HAYS:  YES.

23          THE COURT:  I UNDERSTAND THAT.

24          AND I WILL TELL YOU THIS.  THEY DON'T LEAD HERE.

25  WHAT LEADS HERE ARE THE FEDERAL CLAIMS.  AND IF WE GET TO THE
```

1   END OF THE DAY AND DETERMINE THERE'S NO FEDERAL CLAIMS, THEN,

2   WE PUSH OUT THE STATE CLAIMS BECAUSE WE -- GENERALLY SPEAKING

3   -- BECAUSE WE DON'T WANT TO BE THE STATE TRIAL COURT.  OKAY.

4           SO, MY FOCUS IS PRIMARILY ON THE FEDERAL

5   CONSTITUTIONAL CLAIMS.

6           YOU'RE RIGHT.  YOU HAVE SOME TORT CLAIMS.  I DON'T

7   KNOW THAT THERE'S A TORT THAT PROHIBITS SOMEONE FROM LAUGHING

8   AT YOU.  I'M NOT FAMILIAR WITH ANY TORT -- AND I'M NOT AN

9   EXPERT ON CALIFORNIA TORT LAW.  I DON'T PRETEND TO BE.  BUT

10  I'VE NEVER HEARD OF A TORT WHERE YOU CAN SUE SOMEBODY FOR

11  LAUGHING AT YOU.  OKAY.  SO, MAYBE I'M WRONG.

12          MS. HAYS:  (INAUDIBLE.)

13          THE COURT:  MAYBE YOU'RE GOING TO FIND ONE.

14          (LAUGHTER.)

15          THE COURT:  OKAY.

16          MS. HAYS:  -- OFF.

17          THE COURT:  ALL RIGHT.  NOW --

18          OKAY.  THE NEXT ISSUE, YOU WANT TO TAKE A -- SO,

19  YOU'RE CONVINCED THAT THERE'S VIDEO.  AND THE DEFENDANTS'

20  COUNSEL IS TELLING YOU THERE'S NONE.  AND THIS DOESN'T MAKE ANY

21  LOGICAL SENSE TO YOU.

22          I GET IT.  AND I UNDERSTAND YOUR POSITION, BUT THAT'S

23  NOT ENOUGH FOR ME TO ORDER MS. GREENWOOD TO PRODUCE THE VIDEO.

24  OKAY.

25          EVIDENCE.  ADMISSIBLE EVIDENCE.  THIS SIMPLY DOES NOT

1    MAKE LOGICAL SENSE.  IT'S NOT ADMISSIBLE EVIDENCE, EVEN IF YOU

2    PUT IT IN A DECLARATION.  SOMEBODY HAS TO TELL ME THAT THERE'S

3    VIDEO THERE AND IT'S BEEN DESTROYED.  OKAY.  THAT'S WHAT I

4    NEED.  AND IN THAT SITUATION I WOULDN'T ORDER MS. GREENWOOD TO

5    PRODUCE IT.  IT DOESN'T EXIST.

6            YOU MAY BE ABLE TO COME IN AND GET EVIDENTIARY

7    SANCTIONS IN WHICH YOU ASK THAT THE DEFENDANT BE PREVENTED FROM

8    PRODUCING EVIDENCE THAT WOULD HAVE BEEN CAPTURED ON THE VIDEO,

9    SOMETHING LIKE THAT.  BUT THE LONG AND THE SHORT OF IT IS

10   SHE'S TELLING ME IT DOESN'T EXIST.  I'M ACCEPTING HER

11   REPRESENTATION.  IF YOU PROVE HER WRONG, THE REMEDY IS NOT

12   GOING TO BE TO PRODUCE -- ACTUALLY, I THINK SHE SAID IT WASN'T

13   EVEN RECORDED, BUT -- BUT ANYWAY, WE WOULD BE LOOKING AT

14   EVIDENTIARY SANCTIONS -- NOT AT -- UNLESS YOU WERE ABLE TO

15   ESTABLISH THAT IT DOES EXIST, AND SHE HAS IT OR THE CITY HAS

16   IT, WE'RE NOT GOING TO BE ABLE TO GET ANYWHERE WITH THAT.

17   OKAY.

18            MS. HAYS:  OKAY.  BUT WITH DISCOVERY, DO I NOT HAVE

19   THE RIGHT TO SUBPOENA THE INDIVIDUALS THAT ARE IN CHARGE OF

20   SECURITY TO AT LEAST SAY -- TO BE ABLE TO SHOW THAT IF THE

21   CAMERAS WERE WORKING, AND IF RECORDINGS WERE MADE, THAT THERE

22   IS THE POSSIBILITY THAT THE FOOTAGE COULD HAVE BEEN AVAILABLE

23   ON THESE CAMERAS.  BUT --

24            THE COURT:  YES.

25            MS. HAYS:  -- IT WAS --

1           THE COURT:  YES.  YOU CAN SUBPOENA THOSE PEOPLE AND

2      TAKE THEIR DEPOSITION.  OKAY.

3           MS. HAYS:  WHAT I WAS -- WHAT I NEED TO DO IS --

4      RATHER THAN TO RELY ON THEIR WORD CAN I NOT ACTUALLY GO INTO

5      WHERE THE CAMERAS ARE LOCATED AND DOCUMENT THESE ARE THE ANGLES

6      THAT THIS CAMERA COULD SHOOT.

7           THE COURT:  WHERE -- WHERE WAS THIS?  WAS THIS IN

8      PROCESSING IN CENTRAL DETENTION OR WAS IT --

9           MS. HAYS:  OH, NO, NO.  THE CAMERA FOOTAGE THAT I AM

10     LOOKING REALLY FOR IS THE ONE ON JANUARY 3RD WHEN MY PROPERTY

11     WAS STOLEN IN FRONT OF THE CITY HALL.

12          MS. GREENWOOD TELLS ME THAT DIEM, LARRY DIEM,

13     OFFICER, WAS STANDING ON THE STAIRS OF THE CITY HALL ON SPRING

14     STREET.  THIS WAS SHORTLY AFTER THE OCCUPYING -- HAD BEEN

15     DISASSEMBLED.  I WAS TALKING WITH HIM.  AND THAT'S WHEN MY

16     HANDICAP SCOOTER WAS STOLEN.  AND, SO, HE SAW ME WITH MY

17     EQUIPMENT.  I HAD A DOLLY WITH ABOUT 3,000-DOLLARS' WORTH OF

18     EQUIPMENT.  HE SAW ME PUSH IT UP TO THE STAIRS RIGHT WHERE HE

19     WAS.  AND I WENT DOWN TO SEE IF I COULD -- WHEN I -- WHEN I

20     NOTICED THAT THE SCOOTER WAS MISSING, I WENT BACK UP TO HIM AND

21     TOLD HIM I THINK MY BATTERY HAD RUN OUT OF POWER.  IT GOT ME

22     HALF A BLOCK AWAY FROM MY DESTINATION.

23          SO, WHILE I WAS EXPLAINING TO HIM WHAT HAD HAPPENED

24     TO THE SCOOTER, I -- I -- THEN I LEFT TO GO SEE IF I COULD FIND

25     THE SCOOTER, SEEING IF SOMEBODY WAS PUSHING IT OR SOMETHING.

18

1   AND WHEN -- I COULDN'T FIND IT.  I DIDN'T LOCATE IT.  AND THEN

2   I WENT BACK.  AND WHEN I WENT BACK, MY CART WITH MY

3   3,000-DOLLARS' WORTH OF EQUIPMENT WAS GONE.  IT WAS GONE.

4            THE COURT:  RIGHT.

5            MS. HAYS:  AND I'M LOOKING AT THIS OFFICER WHO IS

6   STANDING RIGHT THERE ON THE STAIRS, AND I SAID WHO TOOK MY

7   SUPPLIES.  AND HE JUST KIND OF SHRUGS.  AND THERE WAS A WOMAN

8   AT THE BUS STOP THERE.  AND SHE TOLD ME THERE WAS A BLACK GUY

9   ON A BICYCLE.

10           SO -- OKAY.  AND THEN A FRIEND OF MINE CAME UP.  AND

11  HE HAD MY -- I HAVE A LONG POWER STRIP, ONE OF THOSE THREE-FOOT

12  POWER STRIPS.  AND HE HAD THAT IN HIS HAND.

13           AND HE SAID, NADINE, IS THIS YOURS?

14           AND I SAID, YEAH, WHERE DID YOU FIND THAT?

15           AND HE SAYS IT WAS IN THE STREET, WHICH WAS DOWN BY

16  THE INTERSECTION OF SPRING AND 1ST.

17           SO, WE CHARGED DOWN TOGETHER.  I LOOKED TO THE LEFT.

18  AND I DIDN'T SEE ANYTHING.  I LOOKED STRAIGHT AHEAD.  I DIDN'T

19  SEE ANYTHING.  I LOOKED TO THE RIGHT.  AND HERE IS THIS BLACK

20  MAN WITH A BICYCLE WITH MY EQUIPMENT.

21           WE RUN ACROSS THE STREET.  HE -- HE SAID -- HE DENIES

22  HAVING TAKEN IT.  HE SAYS SOMEBODY LEFT THIS WITH ME.  HE'S UP

23  THERE IN THE BUSHES.  HE JUST TOLD ME TO WATCH IT FOR HIM.  AND

24  HE'D COME BACK LATER.

25           AND, I MEAN, YOU KNOW, ALL OF THIS IS HAPPENING, YOUR

1   HONOR.  AND YOU'RE TRYING TO THINK, YOU KNOW, ON THE SPLIT

2   SECOND.  BUT I TOLD MY FRIEND -- I SAYS YOU STAY HERE.  I'M

3   GOING TO GO TO THE TOP OF THE BLOCK SO I WOULD BE UP BY

4   BROADWAY.  SO, I WAS UP ON 1ST AND BROADWAY.  HE WAS DOWN ON

5   1ST AND SPRING.  SO, WE BASICALLY HAD -- AND THE BUSHES WERE

6   MOVING.  SO, WE GO, OKAY.  WE'VE GOT THIS GUY, THE THIEF, YOU

7   KNOW, TRAPPED.

8           SO, I GET ON MY PHONE.  AND I DIAL 911.  I MEAN, THIS

9   IS A FELONY CRIME.  I'VE GOT A THIEF IN THE BUSHES.  AND IT

10  TAKES A HALF HOUR BEFORE THE POLICE GET THERE.  AND WHEN THE

11  POLICE ARRIVE, LARRY DIEM, WHO COULD HAVE WALKED ACROSS THE

12  STREET IN A MINUTE, WAS ONE OF THE OFFICERS IN THE CAR.

13  DOMINGUEZ WAS THE OTHER OFFICER.

14          NOW, BEFORE THE OFFICERS ARRIVE, I THOUGHT -- I

15  THOUGHT 15 MINUTES WAS A LONG WAIT FOR A 911 CALL, ESPECIALLY

16  WHEN THERE'S SO MANY OFFICERS AT THE CITY HALL.  AND THE POLICE

17  STATION IS KITTY-CORNER FROM WHERE I'M AT.  SO, I ACTUALLY

18  SAID, OKAY.  I'M GOING TO GO SEE WHO THE THIEF IS.  I'M PRETTY

19  BRAVE, I GUESS.  EITHER THAT OR THE PTSD MAKES YOU DO THINGS

20  THAT A NORMAL PERSON WOULDN'T DO.  BUT I JUST CHARGED INTO THE

21  BUSHES.  AND I SAW THIS LITTLE HISPANIC MAN TRYING TO LAY DOWN

22  A PIECE OF CARDBOARD SO HE COULD FIND A PLACE TO SLEEP.

23          AND THEN WHEN I WAS UP THERE I FOUND TWO OF MY

24  BUCKETS OF EQUIPMENT THAT HAD ALREADY BEEN MOVED OFF OF MY CART

25  AND WERE BEING KIND OF STASHED BEHIND THE BUSHES.

20

1      SO, THIS LITTLE HISPANIC MAN -- HE'S NOT EVEN GOING

2   INTO THE BUCKETS TO SEE WHAT'S IN THEM.  HE'S JUST TRYING --

3   HE'S HOMELESS.  HE'S TRYING TO FIND A PLACE TO TAKE A -- TAKE A

4   REST.

5      SO, WHEN DIEM AND DOMINGUEZ ARRIVE IN THE CAR, I TELL

6   THEM THIS MAN MATCHES THE DESCRIPTION OF A PERSON THAT I TALKED

7   TO WHERE THE EQUIPMENT WAS STOLEN FROM.  AND THEIR COMMENT TO

8   ME WAS DID YOU GET -- WELL, FIRST OF ALL, THEY SAID, DID YOU

9   SEE THIS MAN TAKE YOUR -- YOUR EQUIPMENT.

10      AND I SAID NO.

11      AND THEY SAID, DID YOU GET INFORMATION ON THE

12   WITNESS.

13      AND I SAID, NO, I WAS MORE CONCERNED WITH FINDING MY

14   EQUIPMENT.  BUT THIS MAN MATCHES THE DESCRIPTION OF THE WOMAN

15   THAT SAW THE EQUIPMENT GO AWAY.

16      AND I'VE GONE THERE, YOUR HONOR, AT THE SAME TIME

17   THINKING, WELL, PEOPLE THAT RIDE THE BUS PROBABLY RIDE THAT

18   SAME BUS EVERY DAY.  AND I'VE GONE THERE TRYING TO SEE IF I

19   COULD LOCATE THE SAME PERSON.  AND I COULD NOT --

20      THE COURT:  OKAY.  LET ME -- LET ME STOP YOU FOR A

21   MINUTE BECAUSE I THINK WE'RE GETTING A LITTLE OFF THE TRACK

22   HERE.

23      I ASKED YOU WHERE YOU WANTED TO -- WHAT CAMERA YOU

24   WERE TALKING ABOUT.  AND THIS IS A CAMERA OUTSIDE CITY HALL?

25   OR IS IT A CAMERA INSIDE THE JAIL?

1           MS. HAYS:  NO, NO.  IT'S OUTSIDE.  THERE ARE LOTS OF

2   CAMERAS, YOUR HONOR --

3           THE COURT:  ALL RIGHT.  SO, LET ME STOP YOU THERE.

4           THERE'S A CAMERA OUTSIDE.  YOU DON'T NEED ANY

5   PERMISSION.  YOU CAN WALK OVER THERE AND TAKE A LOOK, RIGHT?

6           MS. HAYS:  YOU CAN SEE THE CAMERAS, BUT YOU CAN'T SEE

7   WHAT THE CAMERAS ARE LOOKING AT.

8           THE COURT:  ALL RIGHT.  BUT I ASSUME THEY'RE ON A

9   SWIVEL.  THEY'RE NOT FIXED, RIGHT?  THEY CAN BE MOVED AND PUT

10  WHERE -- POINTED AT ANYTHING.

11          MS. HAYS:  THERE ARE ALL SORTS OF CAMERAS.  AND MOST

12  OF THE CAMERAS ARE INSIDE SOME SORT OF A PROTECTIVE HOUSING --

13          THE COURT:  OKAY.

14          MS. HAYS: -- AND YOU DON'T -- AND YOU DON'T -- UNLESS

15  YOU ACTUALLY CAN GO INTO THE SECURITY AREA -- YOU'VE SEEN IT

16  WHERE THEY HAVE THE DISPLAY OF MONITORS OR A MONITOR WITH --

17          THE COURT:  ALL RIGHT.  OKAY.  SO, YOU WANT TO GO IN

18  THE SECURITY ROOM AND SEE WHERE THAT CAMERA CAN POINT TO,

19  CORRECT?

20          MS. HAYS:  YES.

21          THE COURT:  OR WHERE IT'S POINTED.

22          YOU ALSO WANT TO GO AND SEE ONE IN THE JAIL?  AM I

23  RIGHT OR NO?

24          MS. HAYS:  WELL, YEAH.

25          THE COURT:  ALL RIGHT.  WELL, MS. HAYS --

22

1          MS. HAYS:  WHAT I AM --

2          THE COURT:  MS. HAYS, YOU'VE GOT TO TELL ME.

3          MS. HAYS:  WHAT I AM TRYING TO DO THROUGH EITHER

4    RECORDING AND/OR VIDEOS IS BE ABLE TO FOLLOW THE TRAIL OF

5    EVENTS.  IF THERE IS A CAMERA THAT WOULD NORMALLY BE SHOOTING

6    THE AREA THAT WE'RE INTERESTED IN, AND IT'S WORKING NOW BUT IT

7    WASN'T WORKING THEN -- SEE, AND I ALSO HAVE ANOTHER TESTIMONY

8    FROM ONE OF THE DETECTIVES THAT MANY OF THE CAMERAS WEREN'T

9    WORKING.

10          THE COURT:  OKAY.  BUT -- BUT REALLY THE -- I'M NOT

11   QUITE SURE WHAT THE RELEVANCE OF IS WHETHER THERE WERE CAMERAS

12   OR POINTING OR WHATEVER THEY WERE DOING -- WORKING, NOT WORKING

13   -- BECAUSE THE CITY IS TELLING ME THEY DON'T HAVE THE VIDEO.

14          MS. HAYS:  OKAY.

15          THE COURT:  SO, WHAT WOULD WE DO?

16          MS. HAYS:  THE CITY IS TELLING ME THEY DON'T HAVE THE

17   VIDEO, BUT THE DETECTIVE TOLD ME THERE WAS VIDEO --

18          THE COURT:  OKAY.  ALL RIGHT.

19          MS. HAYS:  SO --

20          THE COURT:  LET'S ASSUME -- SO, GET A DECLARATION

21   FROM THE -- FROM THE DETECTIVE.  THERE WAS VIDEO.  IF HE

22   DOESN'T WANT TO GIVE YOU A DECLARATION, TAKE HIS DEPOSITION.

23   GET EVIDENCE THAT'S ADMISSIBLE THAT THERE WAS VIDEO.  OKAY.

24   THAT'S THE FIRST THING.  OKAY.

25          NOW, WE'VE GOTTEN OVER THE FIRST HURDLE.

1          THE SECOND HURDLE IS MS. GREENWOOD SAYING IT DOESN'T

2     EXIST.  SO, YOU GOT OVER THE FIRST HURDLE IF YOU GET THE

3     DETECTIVE TO SIGN A DECLARATION THAT SAYS THERE WAS VIDEO, BUT

4     NOW WE GO TO THE NEXT HURDLE.  MS. GREENWOOD SAYS IT DOESN'T

5     EXIST.  YOU'VE GOT TO GET PAST THAT HURDLE FOR ME TO ORDER MS.

6     GREENWOOD TO PRODUCE IT.

7          YOU UNDERSTAND?

8          MS. HAYS:  YES, YOUR HONOR.

9          THE COURT:  I CAN'T ORDER HER TO PRODUCE SOMETHING

10    THAT DOESN'T EXIST.

11         YOU AGREE WITH THAT, RIGHT?

12         MS. HAYS:  YES.

13         THE COURT:  ALL RIGHT.  SO, IF YOU CAN GET EVIDENCE

14    THAT IT EXISTED, AND THAT IT WAS DESTROYED INTENTIONALLY FOR

15    THE WRONG REASONS, YOU MAY HAVE AN ARGUMENT HERE THAT SOMETHING

16    SHOULD BE DONE ABOUT IT.  BUT WE'RE -- WE'RE MILES FROM THERE.

17    WE'RE MILES FROM THERE.  GET THE EVIDENCE.  AND COME AND SEE

18    ME.  WE'LL TALK.  ALL RIGHT.

19         MS. HAYS:  OKAY.

20         THE COURT:  ALL RIGHT.  NOW, LET'S GO TO THE REQUEST

21    FOR ADMISSIONS.

22         YOU DON'T LIKE THE WAY THEY RESPONDED TO THEIR

23    ADMISSIONS.  AND YOU WOULD LIKE ME TO ORDER THEM TO RESPOND,

24    CORRECT?

25         MS. HAYS:  YES.  MY UNDERSTANDING IS WHEN YOU DO THE

1    REQUEST FOR ADMISSIONS AND THE INTERROGATORIES THAT THEY ARE

2    DIRECTED TO THE DEFENDANTS --

3              THE COURT:  THEY ARE.

4              MS. HAYS:  -- THE DEFENDANTS ARE TO ANSWER.

5              THE COURT:  THEY ARE.

6              MS. HAYS:  AND INSTEAD, I AM GETTING MS. GREENWOOD

7    ANSWERING FOR THE DEFENDANTS.

8              THE COURT:  WELL, LET'S TALK ABOUT THE FIRST ONE.

9              ADMIT THAT YOU TOOK AN OATH TO THE LAW ENFORCEMENT

10   CODE -- THAT YOU TOOK AN OATH TO THE LAW ENFORCEMENT CODE OF

11   ETHICS WHEN YOU GRADUATED FROM THE POLICE ACADEMY.  DENIED.

12             YOU DON'T HAVE ANY PROBLEM WITH THAT, RIGHT?

13             MS. HAYS:  NO.

14             THE COURT:  OKAY.  LET'S GO TO THE NEXT ONE.

15             MS. HAYS:  YOUR HONOR, CAN I ASK WHICH -- IT WOULD

16   HELP ME IF I -- I NEED TO LOOK UP THE DOCUMENT THAT WE'RE

17   TALKING ABOUT RIGHT NOW.

18             THE COURT:  THESE ARE THE DEFENDANTS' RESPONSES TO

19   PLAINTIFF'S REQUESTS FOR ADMISSIONS TO ECHIVARIA.

20             MS. HAYS:  DEFENDANTS' RESPONSES.  SO, I MEAN, IS

21   THIS ON A PLEADING OF MINE?

22             THE COURT:  YES.  YOU ATTACHED IT TO YOUR REQUEST TO

23   THE COURT ORDER OF PRODUCTION OF PERTINENT INFORMATION THAT IS

24   DISCOVERABLE.

25             MS. HAYS:  CAN YOU GIVE ME THE DATE ON THAT PLEADING,

1    YOUR HONOR.

2            THE COURT:  YOU FILED IT ON MARCH 20TH.  YOU SIGNED

3    IT ON MARCH 5TH.

4            (PAUSE IN PROCEEDINGS.)

5            THE COURT:  IT'S CALLED,

6            "PLAINTIFF'S REQUEST OF THE COURT TO ORDER

7            PRODUCTION OF PERTINENT INFORMATION THAT IS

8            DISCOVERABLE IN ORDER TO PREPARE FOR TRIAL."

9            MS. HAYS:  OKAY.

10           ARE YOU LOOKING AT EXHIBITS OR THE DOCUMENT ITSELF?

11           THE COURT:  EXHIBIT D.

12           MS. HAYS:  OKAY.  AND FOR SOME REASON -- SEE, I'M

13   HERE BECAUSE I WAS SUPPOSED TO HAVE THE DEPO.  SO, I'M NOT AT

14   HOME.  AND RIGHT NOW I HAVE THE DOCUMENT, BUT I DON'T HAVE THE

15   DOCUMENT THAT WAS SCANNED --

16           THE COURT:  ALL RIGHT.  WELL, LET'S DO THE -- LET'S

17   DO THE BEST WE CAN.  I'LL READ IT.  AND WE'LL TALK ABOUT IT.

18           MS. HAYS:  OKAY.

19           THE COURT:  REQUEST FOR ADMISSION TWO:

20           "ADMIT THAT YOU ARE AWARE OF THE CANON TO THE CODE OF

21           PROFESSIONAL CONDUCT AND RESPONSIBILITIES FOR PEACE

22           OFFICERS, AND THAT YOU LIVE BY THE STANDARDS SET

23           FORTH IN THEM.

24           OBJECTION:  VAGUE AND AMBIGUOUS, UNINTELLIGIBLE,

25           ASSUMES FACTS NOT IN EVIDENCE, NOT REASONABLY

1    CALCULATED TO LEAD TO THE DISCOVERY OF RELEVANT

2    ADMISSIBLE EVIDENCE.

3    FOR THESE REASONS, THE RESPONDING PARTY IS UNABLE TO

4    ADMIT OR DENY."

5    MS. HAYS:  OKAY.  YOUR HONOR, WITH THAT, I INCLUDED

6    WITH THAT REQUEST FOR ADMISSION, I INCLUDED THE DOCUMENT.

7    THE COURT:  ALL RIGHT.  LET ME TALK TO MS. GREENWOOD.

8    MS. GREENWOOD, ARE YOU FAMILIAR WITH THE CODE OF

9    PROFESSIONAL CONDUCT AND RESPONSIBILITIES FOR PEACE OFFICERS?

10   MS. GREENWOOD:  I AM FAMILIAR WITH THE DOCUMENT THAT

11   SHE INCLUDED IN THE REQUEST FOR ADMISSION.  AND THAT CAME FROM

12   WHAT I AM ASSUMING IS A PRIVATE POLICE ACADEMY IN VENTURA

13   COUNTY.

14   THE COURT:  OKAY.  ALL RIGHT.  SO, IT'S NOT WHAT --

15   MS. HAYS:  YOUR HONOR --

16   THE COURT:  HANG ON A SECOND, MS. HAYS.

17   MS. GREENWOOD, IT'S NOT WHAT THEY USE AT THE LAPD.

18   MS. GREENWOOD:  CORRECT.

19   THE COURT:  ALL RIGHT.

20   MS. HAYS, YOU UNDERSTAND THAT?

21   MS. HAYS:  I BELIEVE -- I'M NOT SURE IF IT WAS THE

22   CANONS OR THE OTHER, BUT ONE OF THE DOCUMENTS I DID FIND IN THE

23   MANY-THOUSAND PAGES OF THE POLICE MANUAL THAT IS AVAILABLE

24   ONLINE.  AND I --

25   THE COURT:  OKAY.  BUT YOU UNDERSTAND WHAT SHE'S JUST

1   SAID.  AND I'M GOING TO SUSTAIN HER OBJECTION BASED ON THAT.

2   OKAY.  THAT'S NOT THE ONES THEY USE.

3                "ADMIT THAT YOU ARRIVED IN A PATROL CAR AT THE CORNER

4                OF HILL AND SIXTH STREET IN FRONT OF THE BANK OF

5                AMERICA ON APRIL 25TH, 2012."

6                OBJECTION:  VAGUE, ET CETERA, THE SAME OBJECTION.

7   THEY CAN'T RESPOND.

8                MS. GREENWOOD, TELL ME WHAT THE PROBLEM IS WITH THAT.

9                DID HE NOT ARRIVE OR JUST DIDN'T ASK WHAT TIME OR --

10               MS. GREENWOOD:  DIDN'T ASK WHAT TIME.  I ACTUALLY

11  DON'T KNOW THAT HE ARRIVED IN A PATROL CAR.  I MEAN, IT WASN'T

12  A -- THE PROBLEMS WITH MANY OF THESE IS THAT IT WAS EITHER

13  EXTREMELY BROAD -- SO BROAD THAT THEY WERE DIFFICULT TO ANSWER

14  OR IT WAS SO SPECIFIC THAT IT -- BECAUSE I WENT THROUGH THE

15  QUESTIONS WITH EACH ONE OF THE DEFENDANTS.

16               THE COURT:  OKAY.  ALL RIGHT.  AND THEY DIDN'T FEEL

17  THAT THEY COULD JUST ANSWER THEM YES OR NO.

18               MS. GREENWOOD:  CORRECT.

19               THE COURT:  ALL RIGHT.  SO, YOU DON'T HAVE ANY

20  SPECIFIC RECOLLECTION OF WHY --

21               MS. GREENWOOD:  THE PATROL CAR ISSUE?

22               THE COURT:  YES.

23               MS. GREENWOOD:  NO.  NOT --

24               THE COURT:  OKAY.

25               MS. GREENWOOD:  -- RIGHT OFF THE TOP OF MY HEAD.

1           THE COURT:  ALL RIGHT.

2           MS. HAYS, DO YOU PLAN ON DEPOSING THE OFFICER?

3           MS. HAYS:  WELL, I AM -- I GUESS I'M GOING TO HAVE TO

4  IF THERE IS NO WAY I CAN TALK TO THEM --

5           IS THERE ANY WAY I CAN TALK TO GET INFORMATION

6  WITHOUT A DEPOSITION?

7           THE COURT:  WELL, I MEAN, YOU CAN DO IT THROUGH

8  DISCOVERY, VIA WRITTEN DISCOVERY.  BUT AS YOU CAN SEE, YOU

9  KNOW, YOU HAVE TO BE PRECISE.

10          AND MS. GREENWOOD'S COMPLAINT HERE IS THAT IT'S --

11 IT'S NOT CLEAR ENOUGH IN THIS QUESTION FOR HER CLIENT TO

12 ANSWER.

13          SO, FOR ONE THING YOU COULD PUT -- ADMIT THAT YOU

14 ARRIVED IN A PATROL CAR AT THE CORNER OF HILL AND SIXTH STREET

15 IN FRONT OF THE BANK OF AMERICA BUILDING ON APRIL 25TH, 2012

16 BETWEEN 12:00 AND 12:30 OR SOMETHING.

17          THAT MIGHT BE HELPFUL.  BUT I'M NOT EVEN SURE YOU

18 COULD ANSWER THAT.

19          NUMBER FOUR --

20          MS. HAYS:  WELL, ABOUT THE ONLY WAY THAT I -- AND I'M

21 LEARNING THIS, AS YOU KNOW, YOUR HONOR, DAY BY DAY -- BUT I --

22 THE WAY I THINK I CAN GET AROUND THIS IS TO JUST MAKE A BLANK

23 INTERROGATORY AND SAY DESCRIBE FROM THE TIME YOU WERE FIRST

24 NOTIFIED TO THE TIME YOU WERE NO LONGER INVOLVED WITH THE

25 PLAINTIFF WHAT HAPPENED ON.  AND YOU MAY REFERENCE THE VIDEO TO

1   REFRESH YOUR MEMORY.

2            THE COURT:  ALL RIGHT.  WHY DON'T YOU TRY THAT.

3   OKAY.

4            MS. HAYS:  OKAY.

5            THE COURT:  (READING:)

6            "ADMIT THAT NAVARRO DRIVING THE PATROL CAR AND THAT

7            YOU WERE IN THE PASSENGER SEAT."

8            I THINK THAT YOU WANTED TO SAY,

9            ADMIT THAT NAVARRO WAS DRIVING THE PATROL CAR.  AND

10           YOU WERE IN THE PASSENGER SEAT.

11           AM I RIGHT?

12           MS. HAYS:  HOW WAS IT STATED?

13           THE COURT: "ADMIT" -- YOU LEFT OUT THE WORD "WAS."

14           "ADMIT THAT NAVARRO DRIVING" --

15           MS. HAYS:  OH --

16           THE COURT:  -- IS WHAT YOU SAID.

17           MS. HAYS:  OH, YES.

18           THE COURT:  ALL RIGHT.

19           BUT, AGAIN, YOU KNOW, YOU DON'T PUT THE DATE AND TIME

20  AND LOCATION.  AND, YOU KNOW, THEIR OBJECTIONS ARE -- ARE NOT

21  UNREASONABLE HERE.

22           MS. HAYS:  OKAY.  DID I IN THAT -- SEE, AND I KNOW

23  YOU DON'T WANT TO ASSUME ANYTHING, BUT IT'S LIKE AN OFFICER WAS

24  INVOLVED IN A SPECIFIC EVENT ON A SPECIFIC DAY DURING A

25  SPECIFIC TIME.

1           AND I WOULDN'T BE REFERENCING ANYTHING ELSE OTHER

2    THAN THAT.  AND IN SOME INSTANCES I GROUP THINGS.  AND I PUT A

3    DATE AND A DESCRIPTION OF THE EVENT.  AND THEN I PUT DOWN

4    QUESTIONS THAT TO ME IT WAS VERY OBVIOUS THAT THOSE QUESTIONS

5    PERTAINED TO THAT DATE AND THAT EVENT --

6           THE COURT:  I'M NOT SAYING THAT --

7           MS. HAYS:  -- SO --

8           THE COURT:  GO AHEAD.  GO AHEAD.

9           MS. HAYS:  BECAUSE I'VE NEVER SEEN IT WHERE YOU HAVE

10   TO REPEAT WITH EVERY SINGLE QUESTION ON SUCH AND SUCH DATE

11   BETWEEN THE HOURS OF SUCH AND SUCH.

12          THE COURT:  WELL --

13          MS. HAYS:  AND THEN ON THE SECOND QUESTION, DO THE

14   SAME THING?

15          THE COURT:  WHAT YOU MIGHT BE ABLE TO -- YES, THAT'S

16   GENERALLY THE WAY IT'S DONE.  BUT I'M NOT SAYING YOUR -- YOUR

17   ASSUMPTION WAS UNREASONABLE.  BUT I DON'T -- I DON'T FIND THAT

18   MS. GREENWOOD'S RESPONSES TO BE -- ON BEHALF OF HER CLIENTS --

19   AND HER CLIENTS HELPED HER WITH THIS -- ARE AGAINST THE RULES.

20          WHAT YOU MIGHT DO IS INCLUDE DEFINITIONS.  ALL THE

21   QUESTIONS REGARDING THE APRIL 25TH, 2012 INCIDENT INVOLVE THE

22   ARREST OF MS. HAYS AT THE OCCUPY LOS ANGELES THAT OCCURRED, YOU

23   KNOW, AT 12:15 P.M. ON THIS DATE BY OFFICER SO AND SO, ET

24   CETERA.  OKAY.  HOW DID YOU GET THERE?  WHAT TIME DID YOU

25   ARRIVE?  WHO DROVE YOU?  THINGS LIKE THAT.  ALL RIGHT.

1           MS. HAYS:  OKAY.

2           THE COURT:  AND THEN YOU CAN TRY IN INTERROGATORIES,

3     TOO.

4           THE BOTTOM LINE IS IS I'M GOING TO SUSTAIN THEIR

5     OBJECTIONS TO THESE QUESTIONS AS WRITTEN BECAUSE THEY ARE

6     SOMEWHAT VAGUE.  AND -- BUT I WILL -- EVEN THOUGH I HAVE SET A

7     DEADLINE FOR FILING THE DISCOVERY IN THIS CASE, I'M GOING TO

8     LET YOU HAVE A LITTLE MORE TIME SO THAT YOU CAN TRY AND SEND

9     INTERROGATORIES THAT WON'T BE OBJECTED TO.

10          NOW, THE PROBLEM IS IS THAT YOU'VE ALREADY USED UP

11    SOME OF YOUR ADMISSIONS.  AND YOU'VE ALREADY USED UP SOME OF

12    YOUR THINGS.  BUT -- BUT YOU CAN TAKE ANOTHER SHOT AT IT.

13    ALL RIGHT.

14          MS. HAYS:  OKAY.

15          THE COURT:  OKAY.

16          MS. GREENWOOD, DO YOU WANT TO STATE ANY OBJECTIONS ON

17    THE RECORD TO MY RULINGS?

18          MS. GREENWOOD:  WE -- YES.  I WOULD ACTUALLY -- WE

19    OBJECT TO THE COURT EXTENDING THE DISCOVERY CUTOFF DATE.  IT IS

20    -- THAT'S ONE OF THE REASONS THAT WE'RE -- I'M HERE ON A

21    HOLIDAY IS IN ORDER TO DEPOSE HER IS TO TRY AND MEET WITH THE

22    COURT'S DISCOVERY CUTOFF DATE, WHICH IS WHAT THE COURT VERY

23    STRONGLY ENCOURAGED US TO DO IN ITS MOST RECENT SCHEDULING

24    ORDER.

25          WE STIPULATED ONCE TO A CONTINUANCE.  THERE HAS NOT

1   BEEN -- THERE'S BEEN A LOT OF EMAIL CORRESPONDENCE BETWEEN MS.

2   HAYS AND MYSELF.  BUT SHE HAS NEVER SENT INTERROGATORIES.  SHE

3   HAS NEVER SENT A NOTICE FOR A DEPOSITION.  SHE GETS CAUGHT UP

4   IN THE DETAILS OF OUR ANSWER TO THE REQUESTS FOR ADMISSION AND

5   SORT OF GETS STUCK ON THAT LOOP.

6          AND I AM CONCERNED STRONGLY THAT IF WE SET THE

7   DISCOVERY OUT TOO FAR, ALL THIS IS GOING TO DO IS -- IS JUST

8   DELAY AND EXTEND THIS -- THIS PROCESS.

9          THE COURT:  I'LL TELL YOU WHAT I'M GOING TO DO AS A

10  COMPROMISE.

11         I'M GOING TO KEEP THE DISCOVERY DEADLINE FOR

12  DEPOSITIONS.  I'M GOING TO LET HER SEND OUT SUPPLEMENTAL

13  INTERROGATORY RESPONSES.

14         AND IS THE 4TH THE DEADLINE?

15         MS. GREENWOOD:  THE 4TH IS THE DEADLINE, YES.

16         THE COURT:  BY APRIL 4TH.

17         MS. HAYS, ANY ADDITIONAL DISCOVERY -- WRITTEN

18  DISCOVERY YOU WANT TO PROPOUND HAS TO BE SENT BY THE 4TH.

19         DO YOU UNDERSTAND?

20         AND THEN SHE'LL --

21         MS. HAYS:  YOU'RE SAYING WRITTEN DISCOVERY.

22         THE COURT:  INTERROGATORIES, REQUESTS FOR ADMISSIONS,

23  REQUEST FOR PRODUCTION.  IT HAS TO BE MAILED TO MS. GREENWOOD

24  NO LATER THAN THE 4TH, WHICH IS FRIDAY.

25         I AM NOT GOING TO EXTEND THE DEPOSITION DEADLINE.

1    WHATEVER DEPOSITIONS YOU'VE WORKED OUT WITH THE OTHER SIDE, AND

2    YOU'RE GOING TO TAKE, YOU CAN TAKE BETWEEN NOW AND FRIDAY.

3          MS. HAYS:  YOU'RE SAYING THAT ALL DEPOS NEED TO BE

4    TAKEN BETWEEN NOW AND FRIDAY?

5          THE COURT:  WASN'T -- ISN'T THAT MY ORDER, MA'AM?

6    DIDN'T I ORDER THAT ALREADY?

7          MS. HAYS:  BUT, YOUR HONOR, I HAVE SUBMITTED TO MS.

8    GREENWOOD THE INTERROGATORIES TO WHICH SHE SAYS THAT SHE HAS I

9    BELIEVE UNTIL THE 8TH OR THE 15TH.

10         AND THE THING IS IS I WOULD NOT KNOW HOW TO DEPOSE IF

11   I DON'T HAVE THOSE ANSWERS TO MY INTERROGATORIES.  SO, THERE IS

12   A --

13         THE COURT:  MS. HAYS -- MS. HAYS, I UNDERSTAND THE

14   RULES.

15         WHEN YOU SEND -- PROPOUND DISCOVERY ON THE OTHER

16   SIDE, THEY HAVE 30 DAYS.  THIS CASE WAS FILED IN NOVEMBER OF

17   2012.  OKAY.  SO, NOW, IT'S THE SECOND EXTENDED TIME FOR THE

18   DISCOVERY CUTOFF.  AND YOU'RE LIKE, BUT, JUDGE -- JUDGE, I

19   HAVEN'T FINISHED MY DISCOVERY.

20         THAT'S NOT MY FAULT.

21         MS. HAYS:  YOUR HONOR --

22         THE COURT:  YOU HAD -- YOU HAD 16 MONTHS TO DO

23   DISCOVERY.

24         MS. HAYS:  YOUR HONOR --

25         THE COURT:  SIXTEEN MONTHS.

34

```
1              MS. HAYS:  YOUR HONOR --

2              THE COURT:  YES.

3              MS. HAYS:  IT TOOK ME ALMOST ONE YEAR BEFORE I GOT

4    ENOUGH COOPERATION FROM THE CITY ATTORNEY'S OFFICE TO IDENTIFY

5    THE OFFICERS THAT WERE IN THESE EVENTS.  A YEAR.

6              THE COURT:  OKAY.

7              MS. HAYS:  YOU KNOW, I -- I HAVE -- IT'S ONE THING IF

8    I'M PROCRASTINATING, YOUR HONOR.  BUT IT'S ANOTHER THING WHEN

9    THEY ARE JUST DRAGGING -- DRAGGING DISCOVERY SO THAT I CANNOT

10   --

11             THE COURT:  I DISAGREE.  HERE'S WHAT YOU DO.

12             MS. HAYS:  -- TRIAL.

13             THE COURT:  AS SOON AS DISCOVERY OPENS, YOU SEND AN

14   INTERROGATORY, PLEASE LIST THE NAME OF -- NAMES OF ALL OFFICERS

15   IN THE ARREST OF NADINE HAYS AT SUCH AND SUCH A DATE AND SUCH

16   AND SUCH A TIME.  BOOM.  30 DAYS LATER YOU HAVE EVERYBODY'S

17   NAME.  30 DAYS LATER.

18             SO, I UNDERSTAND THAT YOU'RE PRO SE.  AND THIS IS ONE

19   OF FIVE CASES YOU HAVE GOING AT THE SAME TIME.  AND THERE'S A

20   LOT OF ISSUES THAT YOU HAVE GOING ON.

21             YOU HAVE TO UNDERSTAND SOMETHING HERE AS WELL.  I

22   DON'T TAKE SIDES IN LITIGATION.  THEY HAVE NOT BEEN PROVEN TO

23   HAVE DONE ANYTHING WRONG.  THEY ARE AS INNOCENT IN THIS CASE AS

24   YOU ARE.  AND THEY ARE SHOVELING MONEY OUT THE DOOR TO PAY A

25   LAWYER TO REPRESENT THEM IN A CASE IN WHICH THEY'VE TOLD ME
```

1  TIME AND AGAIN THEY DIDN'T DO ANYTHING WRONG.

2          SO, WHAT I HAVE DONE IS I HAVE TRIED TO SET THIS UP

3  TO BE FAIR TO BOTH SIDES.  AND IN DOING SO, I HAVE SET VARIOUS

4  CUTOFF DEADLINES.  OKAY.  AND THE FACT DISCOVERY CUTOFF WAS

5  APRIL 4TH.  AND WHAT I'M DOING IS IS I'M EXTENDING IT FOR

6  WRITTEN DISCOVERY.  BECAUSE I LOOKED THROUGH THE REQUEST FOR

7  ADMISSIONS YOU SENT AND WITH YOUR EXPLANATIONS AND YOUR

8  INEXPERIENCE WITH THE RULES AND HOW THIS GOES ON, I'M GOING TO

9  GIVE YOU A BREAK.  BUT I'M NOT OPENING IT UP FOR EVERYTHING

10  ELSE.

11          ALL RIGHT.  SO, YOU SEND OUT -- YOU CAN -- BY FRIDAY

12  YOU PROPOUND ANY WRITTEN DISCOVERY YOU WANT, ANY ADDITIONAL

13  WRITTEN DISCOVERY.  THEY'LL HAVE TO ANSWER IT IN 30 DAYS.  AND

14  THAT'S WHAT YOU'RE GOING TO BE USING FOR THE FACTS.

15          YOU KNOW WHAT HAPPENED.  YOU WERE THERE.

16          MS. HAYS:  YEAH -- I DO --

17          THE COURT:  THIS ISN'T A MYSTERY TO YOU.

18          MS. HAYS:  AND I'M TRYING TO GET THE STUFF, YOUR

19  HONOR.  AND NOBODY WILL GIVE IT TO ME.

20          THE COURT:  WHEN THEY DON'T GIVE IT TO YOU, WHEN YOU

21  -- WHEN YOU A FILE A CASE IN NOVEMBER OF 2012, AND YOU DON'T

22  KNOW WHO THE OFFICERS ARE.  AND YOU PROPOUND WRITTEN DISCOVERY

23  ON THE CITY.  AND YOU TELL THEM, TELL ME WHO THE NAMES ARE, AND

24  YOU DON'T GET THEM IN JANUARY OF 2013, YOU FILE A MOTION.  YOU

25  MEET WITH MS. GREENWOOD.  AND THEN YOU FILE A MOTION AND SAY,

1    JUDGE, I WANT THE NAMES OF THE OTHER DEFENDANTS.  THEY DIDN'T

2    GIVE THEM TO ME.

3         YOU KNOW WHAT MY ANSWER IS.  MS. GREENWOOD, GIVE HER

4    THE NAMES.  NOW.  GET ON THE PHONE WITH ME AND MS. HAYS AND

5    TELL THEM WHO EVERYBODY IS.  ALL RIGHT.  THAT DIDN'T HAPPEN.

6    AND YOU CAN BLAME MS. GREENWOOD.  AND YOU CAN BLAME THE COURT.

7    BUT THERE'S SOME BLAME THAT HAS TO BE DIRECTED IN YOUR WAY AS

8    WELL.  OKAY.

9         AND, NO, I AM NOT GOING TO BE EXTENDING -- THIS CASE

10   WAS FILED IN NOVEMBER OF 2012.  IT'S NOW APRIL OF 2014.  AND

11   YOU HAD A SUFFICIENT TIME TO DO THE DISCOVERY.

12        MS. HAYS:  OKAY.  I STARTED MAKING REQUESTS TO THE

13   COURT TO GET COMPLIANCE SO THAT I COULD GET INFORMATION

14   STARTING BACK IN AUGUST OF LAST YEAR ON AUGUST 2ND.  IT WAS A

15   PLEADING.

16        THE COURT:  MS. HAYS --

17        MS. HAYS:  NOW, IF THE COURT ORDERS --

18        THE COURT: -- THERE'S A -- THERE ARE PLEADINGS THAT

19   YOU FILE ALMOST EVERY WEEK IN MY COURT, RIGHT?

20        MS. HAYS:  YEAH.  I --

21        THE COURT:  I THINK YOU FILED YOUR FIRST LAWSUIT IN

22   HERE -- WAS IT 2008 OR 2009?

23        MS. HAYS:  2009.

24        THE COURT:  WHAT WAS IT?  WHAT WAS IT? -- 2009.

25        MS. HAYS:  YES.

1           THE COURT:  WOULD IT BE FAIR TO SAY THAT ALMOST EVERY

2    SINGLE WEEK SINCE 2009 YOU FILED SOMETHING IN MY COURT?  I KNOW

3    YOU FILE THINGS.  AND I RESPOND TO THEM.  ALL RIGHT.

4           AND THIS IS A VERY SIMPLE STRAIGHTFORWARD INCIDENT.

5    YOU WERE STANDING IN FRONT OF CITY HALL.  YOU ENDED UP GETTING

6    ARRESTED, RIGHT?

7           MS. HAYS:  NO, YOUR HONOR.  THERE'S A LOT MORE TO IT

8    THAN THAT.

9           THE COURT:  ALL RIGHT.  I UNDERSTAND.  BUT YOU KNOW

10   ALL THE FACTS.  YOU KNOW YOUR VERSION AND YOUR SIDE OF THE

11   STORY.  YOU MAY HAVE WANTED TO DEVELOP WHAT THEIR SIDE OF THE

12   STORY WAS I'M SURE THROUGH EMAILS AND DISCUSSIONS.

13   MS. GREENWOOD HAS POINTED THAT OUT.  BUT WE'RE DONE.  WE'RE

14   DONE WITH THE DISCOVERY.  I'M GIVING YOU AN EXTRA 30 DAYS TO

15   SEND OUT WRITTEN DISCOVERY.  I'M NOT OPENING IT UP FOR

16   DEPOSITIONS BECAUSE YOU DIDN'T ASK ME TO.  AND IT WASN'T IN

17   FRONT -- IT'S NOT IN FRONT OF ME.  ALL RIGHT.

18           MS. HAYS:  OKAY.  BUT YOU -- YOU'RE SAYING THAT --

19   THAT BY APRIL 4TH ALL WRITTEN REQUESTS FOR DISCOVERY HAVE TO BE

20   OUT.  AND YOU'RE NOT GOING TO EXTEND THE TIME TO DO

21   DEPOSITIONS?

22           THE COURT:  RIGHT.

23           MS. HAYS:  ARE YOU ONLY INTERESTED AT THIS STAGE OF

24   THE GAME IN THE ARREST IN FRONT OF BANK OF AMERICA?

25           THE COURT:  WELL, LET ME TELL YOU WHAT I'M INTERESTED

38

1    IN.  I'M INTERESTED IN THAT I HAD SET THE DISCOVERY CUTOFF FOR

2    DECEMBER 31ST.  AND THAT WAS THE CUTOFF.  AND YOU DIDN'T FINISH

3    DISCOVERY.

4              MS. HAYS:  WELL --

5              THE COURT:  YOU FOLKS --

6              MS. HAYS:  -- I COULD HAVE HAD IT FINISHED, YOUR

7    HONOR, IN A MONTH --

8              THE COURT:  YOU --

9              MS. HAYS:  -- IN A MONTH --

10             THE COURT:  YOU MADE --

11             MS. HAYS: -- IF YOU HAD GIVEN ME WHAT I REQUESTED.

12             THE COURT:  SO, I GAVE YOU TO APRIL 4TH.  THAT WAS

13   THE ORDER OF THE COURT.  IT WASN'T WISHFUL.  IT WASN'T MAYBE.

14   IT WASN'T IF YOU FEEL LIKE IT OR YOU GET AROUND TO IT.  THAT'S

15   THE COURT'S ORDER.  OKAY.  THAT WAS THE ORDER THAT YOU KNEW IN

16   DECEMBER.  YOU UNDERSTOOD THAT AS YOU UNDERSTAND IN APRIL THAT

17   THAT'S THE SAME DATE THAT I GAVE YOU FOUR MONTHS AGO.  OKAY.

18             SO, NO, I'M NOT EXTENDING THE DEPOSITIONS.  ALL

19   RIGHT.

20             THAT'S MY --

21             MS. GARNER:  YOUR HONOR --

22             THE COURT:  WHAT?

23             MS. GARNER:  THIS IS LISA GARNER.

24             MAY I INQUIRE ABOUT SOMETHING?

25             THE COURT:  YEAH.  WHAT ARE YOU GOING TO DO ABOUT

1    DISCOVERY?

2              MS. GARNER:  WELL, MY -- MY INQUIRY IS I -- THIS IS

3    THE FIRST I'VE LEARNED THAT PLAINTIFF'S DEPOSITION IS SCHEDULED

4    FOR TODAY.

5              ARE THERE ANY OTHER DEPOSITIONS SCHEDULED FOR THIS

6    WEEK?

7              MS. GREENWOOD:  THERE ARE NOT.

8              MS. GARNER:  OKAY.

9              MS. GREENWOOD:  AND WE COULD DO THE DEPOSITION LATER

10   THIS WEEK IF THAT WOULD BE HELPFUL FOR YOU.

11             MS. GARNER:  WELL, YES.  I MEAN, I CAN BASICALLY BE

12   THERE ANY DAY BUT TODAY FOR MS. HAYS'S DEPOSITION.  I DON'T

13   KNOW WHAT THE CIRCUMSTANCES ARE, BUT THAT'S MY --

14             YOU KNOW, WE'RE -- YOU KNOW, WE'RE ALSO IN THE -- IN

15   THE PROBLEM THAT -- YOUR HONOR, THAT WE HAVEN'T OFFICIALLY BEEN

16   ALLOWED TO APPEAR IN THE CASE.  I GUESS WE'RE UNOFFICIALLY

17   APPEARING IN THE CASE UNTIL MY CLIENT'S DEFAULT IS SET ASIDE.

18   BUT I COULD BE PRESENT AT A DEPOSITION ANY DAY THIS WEEK EXCEPT

19   FOR TODAY.

20             THE COURT:  ALL RIGHT.  WELL -- AND THEN WHAT

21   DISCOVERY DO YOU WANT TO CONDUCT?

22             MS. GARNER:  WELL, I WANTED TO OBVIOUSLY TAKE MS.

23   HAYS'S DEPOSITION AS WELL AS DO SOME WRITTEN DISCOVERY --

24             THE COURT:  ALL RIGHT.

25             MS. GARNER:  -- WITH HER.

40

```
 1              THE COURT:  OKAY.  I MEAN, YOU KNOW, I'M SURE THAT
 2   MS. GREENWOOD IS GOING TO SHARE THE DISCOVERY WITH YOU.
 3              MS. GREENWOOD:  HAPPILY.
 4              MS. GARNER:  YEAH.  AND WHAT I WOULD DO IS SEE IF I
 5   NEED ANY FURTHER DISCOVERY FOLLOWING WHAT I GET FROM MS.
 6   GREENWOOD, SO.
 7              THE COURT:  WHO IS YOUR CLIENT?
 8              MS. GARNER:  ROBERT TAYLOR.  HE IS A PRIVATE SECURITY
 9   GUARD AT THE INTERNATIONAL JEWELRY CENTER IN -- THE BUILDING IN
10   WHICH BANK OF AMERICA IS A TENANT.
11              THE COURT:  OKAY.  ALL RIGHT.
12              OKAY.  MS. HAYS, THEY BOTH WANT TO TAKE YOUR
13   DEPOSITION.  MS. GREENWOOD HAS NOTICED IT FOR TODAY.  COUNSEL
14   WANTS TO TAKE IT LATER -- WANTS ME TO MOVE IT LATER IN THE
15   WEEK.
16              OKAY.  MS. HAYS, WHAT DO YOU WANT TO DO ABOUT YOUR
17   DEPOSITION?
18              MS. HAYS:  IT -- LIKE I SAID, THESE GUYS DO THIS FOR
19   A PROFESSION.  AND THIS IS THE FIRST TIME.  I'VE NEVER HAD A
20   DEPO OR BEEN INVOLVED IN A DEPOSITION.  SO, I'M CLUELESS AS TO
21   WHAT TO EXPECT.
22              PERSONALLY, I WOULD RATHER JUST BE THE THREE OF US
23   GATHER IN A CIRCLE TO DISCUSS THE CASE.  AND THEN MAYBE IF THEY
24   WANT TO HAVE SOMETHING THAT CAN BE ADMISSIBLE IN COURT, THEN,
25   TO DO A DEPO FROM THERE.
```

1            I FEEL FOR MS. GARNER BECAUSE, YEAH, SHE'S COMING

2    INTO THIS, YOU KNOW, WAY DOWN THE ROAD.  SHE -- I DON'T THINK

3    SHE HAS EVEN MY SIDE OF THE STORY OUTSIDE OF MY COMPLAINT

4    REGARDING WHAT'S HAPPENING.

5            THE COURT:  ALL RIGHT.  WHAT DO --

6            MS. HAYS:   AND --

7            THE COURT:  WHAT DO YOU SAY WE MOVE MS. HAYS'S

8    DEPOSITION A COUPLE OF DAYS.

9            MS. HAYS, WHEN YOU'RE IN THIS DEPOSITION, AND COUNSEL

10   ARE TALKING WITH YOU AND TAKING YOUR DEPO- -- YOUR TESTIMONY,

11   YOU'RE GOING TO BE ALLOWED TO DISCUSS THINGS WITH THEM OFF THE

12   RECORD.  THEY MAY BE WILLING TO WORK OUT SOME ACCOMMODATIONS

13   FOR YOU.  ALL RIGHT.  TRY ASKING THEM.  ALL RIGHT.

14           MS. HAYS:  YOUR HONOR, IF -- IF I HAVE TWO DAYS OUT

15   OF THIS WEEK THAT ARE GOING TO BE SPENT DRIVING INTO L.A. TO DO

16   DEPOS, IT'S -- I'M BEING PREJUDICED TREMENDOUSLY BECAUSE IF I'M

17   NOT ABLE TO WRITE MY INTERROGATORIES IN TIME, AND THERE'S A

18   CUTOFF DATE, YOU KNOW --

19           THE COURT:  ALL RIGHT.

20           MS. HAYS:  -- I HAVE TO SPEND TIME --

21           THE COURT:  ALL RIGHT.

22           HOW MANY -- MS. HAYS, I'M NOT EVEN SURE YOU WANT TO

23   TAKE A DEPOSITION IN THIS CASE.

24           DO YOU KNOW IT'S GOING TO COST YOU MONEY?  HAVE YOU

25   TAKEN A DEPOSITION BEFORE?

42

1          MS. HAYS:  I DO, YOUR HONOR.  IN FACT, I WAS GOING TO

2     BRING THAT QUESTION UP WAS -- IS IT NOT EQUALLY STRONG, IF NOT

3     STRONGER, TO JUST TAKE A WITNESS ON THE STAND?

4          THE COURT:  YOU KNOW, THAT'S WHAT A LOT OF LAWYERS

5     DO.

6          FIRST OF ALL, MS. HAYS, 99 PERCENT OF ALL CIVIL CASES

7     NEVER SEE A COURTROOM.  THEY NEVER GO TO TRIAL.  WE HAVE 15,000

8     CIVIL CASES FILED IN OUR COURTHOUSE EVERY YEAR.  LESS THAN 70

9     GO TO TRIAL.  OKAY.  SO, YOU CAN TAKE THE DEPOSITION AND SPEND

10    THE MONEY IF YOU WANT, BUT THE CHANCES OF THE CASE GOING TO

11    TRIAL ARE SLIM AND NONE.  THAT'S NUMBER ONE.

12         NUMBER TWO, IF YOU WANT TO TAKE A DEPOSITION, YOU'VE

13    GOT TO NOTICE THE DEPOSITIONS.  AND YOU'VE GOT TO CALL A COURT

14    REPORTER.  AND HE OR SHE WANTS TO BE PAID UPFRONT.  OKAY.

15    YOU'VE GOT TO PAY FOR THEIR APPEARANCE FEE.  AND IF YOU WANT A

16    TRANSCRIPT YOU HAVE TO PAY PER PAGE.  AND IT'S A COUPLE OF

17    DOLLARS PER PAGE, DEPENDING ON HOW QUICKLY YOU WANT IT.

18         THE BOTTOM LINE IS IT'S NOT UNREASONABLE TO EXPECT A

19    DEPOSITION TO COST IN JUST A NORMAL CASE FOR A FOUR-HOUR

20    DEPOSITION BETWEEN 500 AND A THOUSAND DOLLARS.  ALL RIGHT.

21         DO YOU WANT TO --

22         MS. HAYS:  I CAN'T -- I CAN'T NOTICE A DEPOSITION AND

23    ALLOW THE REQUIRED NUMBER OF DAYS AND HAVE IT DONE BY FRIDAY.

24         THE COURT:  WELL, BUT YOU DIDN'T NOTICE A DEPOSITION

25    BEFORE --

1            YOU KNOW, MS. HAYS, YOU TALK LIKE, GEE, I'M ALREADY

2    PAST THE EXIT.  NOW, WHAT CAN I DO?  I CAN'T TAKE THE EXIT.  OF

3    COURSE.  WHEN YOU'RE PAST THE EXIT, YOU CAN'T TAKE IT.  YOU

4    DROVE PAST THE EXIT, MA'AM.  YOU DROVE PAST THE EXIT.  FOR THE

5    LAST THREE MONTHS YOU DIDN'T NOTICE A DEPOSITION.

6            AND, NOW, YOU'RE LIKE, JUDGE, YOU'RE BEING SO

7    UNREASONABLE.  YOU KNOW, NO, I'M NOT BEING UNREASONABLE.

8    YOU'VE ALREADY PASSED THE TIME WHERE YOU COULD NOTICE A

9    DEPOSITION.  AND YOU KNOW THAT.

10           IF YOU DIDN'T KNOW THE RULES, YOU'D KNOW IT

11   INTUITIVELY THAT WHEN YOU SHOW UP ON MONDAY, MARCH 31ST FOR A

12   HEARING WITH THE COURT, AND THE DEADLINE FOR TAKING DEPOSITIONS

13   IS FRIDAY, THAT YOU'VE ALREADY PASSED THE DEADLINE.

14           SO, STOP BLAMING THE WORLD.  LOOK INSIDE YOURSELF AND

15   TELL ME WHY DIDN'T YOU NOTICE A DEPOSITION IN JANUARY, IN

16   FEBRUARY, OR IN MARCH.

17           MS. HAYS:  BECAUSE MY DAUGHTER-IN-LAW HAS CANCER.

18           THE COURT:  OKAY.  WHY DON'T YOU FILE A MOTION AND

19   TELL ME THAT.  WHY ARE WE WALKING AROUND IN CIRCLES.  AND YOU

20   JUST ACTING LIKE THAT THIS IS A -- YOU KNOW, AN ACT OF GOD THAT

21   IT'S MARCH 31ST.  AND YOU HAVEN'T NOTICED ANY DEPOSITIONS.

22           WHY DON'T YOU SAY, JUDGE, THERE'S A REASON I HAVEN'T

23   NOTICED ANY DEPOSITIONS.  MY DAUGHTER-IN-LAW HAS CANCER.  AND I

24   CAN'T FOCUS ON THE CASE.  NOW, YOU'VE GOT AN ARGUMENT, MS.

25   HAYS.  OKAY.  BEFORE IT WAS GIBBERISH.  NOW, YOU HAVE AN

1    ARGUMENT.

2            ALL RIGHT.  HERE'S WHAT I'M GOING TO DO, MS.

3    GREENWOOD, OVER YOUR OBJECTION.

4            AND I SEE THAT -- THAT -- THAT MS. GARNER IS GOING TO

5    HAVE TO -- BE ALLOWED TO TAKE SOME DISCOVERY BECAUSE THIS THING

6    IS JUST SO OUT OF -- OUT OF KILTER.

7            ALL RIGHT.  I'M GOING TO EXTEND THE DISCOVERY CUTOFF

8    FOR ONE MORE MONTH.  IT'S NOW SET FOR APRIL 4TH.  I'M GOING TO

9    EXTEND IT TO MAY 4TH.

10           MS. HAYS, DO YOU HEAR ME?

11           MS. HAYS:  YES.

12           THE COURT:  MAY 4TH.

13           DO NOT GET ON THE PHONE WITH ME THE WEEK BEFORE MAY

14   4TH AND TALK TO ME ABOUT AN ACT OF GOD HOW YOU DIDN'T GET A

15   DEPOSITION.  WHATEVER YOU'RE GOING TO DO -- AND DISCOVERY IN

16   THIS CASE IS DONE BY MAY 4TH.

17           YOU GOT IT?

18           MS. HAYS:  YES, YOUR HONOR.

19           THE COURT:  OKAY.

20           MS. GARNER, I'M GOING TO PUT YOU UNDER THE SAME TIGHT

21   DEADLINES.  I KNOW IT'S NOT THAT FAIR TO YOU, BUT AS YOU CAN

22   SEE, WE'RE 16 MONTHS INTO THE CASE.  THE COURT HAS KIND OF LOST

23   HIS PATIENCE.  AND THIS CAN'T GO ON FOREVER.

24           MS. GREENWOOD IS COMPLAINING ABOUT PREJUDICE TO HER

25   SIDE OR THE IMPLICATION IS THERE.  SHE WANTS TO MOVE ON.

```
 1                MS. GARNER:  I UNDERSTAND.  AND THANK YOU, YOUR
 2   HONOR.
 3                COULD -- COULD WE HAVE MS. HAYS'S DEPO -- DEPOSITION,
 4   YOU KNOW, A LITTLE LATER THIS WEEK, EVEN IF IT'S TOMORROW OR
 5   WEDNESDAY, THAT WOULD BE --
 6                THE COURT:  YES.
 7                MS. GARNER:  AND I DON'T HAVE A PROBLEM WITH --
 8                THE COURT:  HOW ABOUT FRIDAY?  LET'S SET IT FOR
 9   FRIDAY.
10                MS. GARNER:  OH, YOUR HONOR, I HAVE A HEARING ON
11   FRIDAY.  WELL, LET'S DO IT FRIDAY.  I'LL GET SOMEONE ELSE TO DO
12   THE HEARING.
13                THE COURT:  YES.  OR WORK AROUND YOUR HEARING.
14                ALL RIGHT.  LET'S SET IT FOR FRIDAY.
15                MS. HAYS CAN GO HOME.  SHE CAN GET HER DISCOVERY, HER
16   WRITTEN DISCOVERY DONE OVER THE NEXT THREE DAYS.  SHE CAN
17   PREPARE FOR HER DEPOSITION AND COME IN ON FRIDAY AND BE
18   DEPOSED.
19                IS THAT ALL RIGHT, MS. HAYS?
20                MS. HAYS:  NOW, CAN THE DEPOSITION BE LIKE MS.
21   GREENWOOD AND MS. GARNER DEPOSING ME?
22                THE COURT:  YES.  THEY'RE GOING TO DEPOSE YOU.
23   THEY'RE GOING TO ASK YOU TO TELL YOUR STORY.
24                MS. HAYS:  OKAY.
25                THE COURT:  AND IT'S GOING TO BE UNDER OATH.
```

46

1           MS. HAYS:  THEY CAN DO IT TOGETHER.

2           THE COURT:  YES.

3           MS. HAYS:  OKAY.

4           THE COURT:  MS. GREENWOOD WILL GO FIRST FOLLOWED BY

5     MS. GARNER.

6           MS. HAYS:  OKAY.

7           MS. GARNER:  AND COULD SOMEONE JUST TELL ME --

8           MAYBE, MS. GREENWOOD, YOU COULD SEND ME AN EMAIL AS

9     TO WHERE THIS DEPOSITION WILL BE.

10          MS. GREENWOOD:  YES.

11          MS. GARNER:  AND WHEN.

12          MS. GREENWOOD:  CITY HALL EAST, FRIDAY, 10:30.

13          MS. GARNER:  10:30.

14          MS. GREENWOOD:  WILL THAT GIVE YOU ENOUGH TIME TO --

15          MS. GARNER:  YEAH.

16          MS. GREENWOOD:  -- LET YOU DO YOUR --

17          MS. GARNER:  NO.  MY HEARING IS AT 1:30 --

18          MS. GREENWOOD:  OH --

19          MS. HAYS:  YOUR HONOR --

20          MS. GREENWOOD:  -- DARN.

21          MS. HAYS:  -- AT 11:00 A.M. WE HAVE A TELECONFERENCE

22    WITH --

23          THE COURT:  ALL RIGHT.

24          OKAY.  WHAT I -- WHAT I THINK I MIGHT DO IS MOVE IT

25    TO 10:00.

1          ARE YOU ALL RIGHT WITH THAT, MRS. HAYS?

2          MS. HAYS:  ON FRIDAY -- PERSONALLY, I WOULD RATHER DO

3     THEM ON SEPARATE DAYS.  THERE'S ONLY SO MUCH --

4          THE COURT:  ALL RIGHT.  WE'RE GOING TO DO THEM ON

5     SEPARATE DAYS.

6          I'M GOING TO TAKE THAT OFF CALENDAR.  WE'RE GOING TO

7     CHANGE THAT ONE.  ALL RIGHT.  YOU DON'T HAVE TO WORRY ABOUT THE

8     HEARING ON FRIDAY.  OKAY.

9          MS. HAYS:  OKAY.

10         THE COURT:  ALL RIGHT.

11         SO, YES, MS. HAYS, THEY'RE GOING TO QUESTION YOU

12    UNDER OATH.  I AM GOING TO BE HERE ON FRIDAY IN MY OFFICE.

13         MS. HAYS, DO YOU HEAR ME?

14         MS. HAYS:  YES.

15         THE COURT:  IF THERE'S A PROBLEM, AND YOU NEED TO

16    CALL MY CLERK AND GET ME ON THE TELEPHONE AND RESOLVE SOME

17    DISAGREEMENTS, I WILL GET ON THE PHONE WITH YOU FOLKS.  ALL

18    RIGHT.

19         MS. HAYS:  OKAY.

20         THE COURT:  MS. GREENWOOD.

21         MS. GREENWOOD:  YES.

22         THE COURT:  ALL RIGHT.

23         MS. GARNER:  THANK YOU.

24         THE COURT:  AND --

25         MS. GARNER:  10:30 A.M. CITY HALL EAST.

1              IS THERE A ROOM NUMBER?

2              MS. GREENWOOD:  THE SIXTH FLOOR.  I'M NOT SURE WHICH

3    ROOM WE'RE GOING TO BE IN YET.

4              MS. GARNER:  OKAY.  SIXTH FLOOR.

5              THE COURT:  OKAY.  HERE'S THE DEAL.  I'M ISSUING A

6    MINUTE ORDER.  I'M EXTENDING DISCOVERY TILL MAY 4TH.  IT'S

7    GOING TO INCLUDE THE NEW DEFENDANT AS WELL, ROBERT TAYLOR.

8    OKAY.

9              MS. HAYS:  YES.

10             THE COURT:  ALL WRITTEN DISCOVERY AND ALL DEPOSITIONS

11   HAVE TO BE COMPLETED BY THAT TIME.

12             IF FOR ANY REASON SOME -- ACTUALLY, ALL WRITTEN

13   DISCOVERY HAS TO BE SERVED BY THAT TIME.  AND ALL DEPOSITIONS

14   HAVE TO BE COMPLETED BY THAT TIME.  ALL RIGHT.

15             MS. GARNER:  SO, ALL WRITTEN DISCOVERY MUST BE SERVED

16   BY?

17             THE COURT:  MAY --

18             MS. GREENWOOD:  MAY 5TH, YOUR HONOR, BECAUSE THE 4TH

19   IS A SUNDAY.

20             THE COURT:  MAY 5TH.  THANK YOU, COUNSEL.

21             MS. GARNER:  ALL WRITTEN DISCOVERY SERVED BY MAY 5TH.

22             THE COURT:  AND ALL DEPOSITIONS COMPLETED.  AND I

23   KNOW THAT'S A LITTLE UPSIDE-DOWN, BUT IT'S GOING TO BE JUST

24   FINE.

25             MS. GARNER:  THAT'S FINE.

49

1          THANK YOU, YOUR HONOR.

2          THE COURT:  ALL RIGHT.

3          MS. HAYS, YOU'RE GOING TO HAVE AN OPPORTUNITY TO TALK

4    WITH THE LAWYERS DURING YOUR DEPOSITION.  SEE IF YOU CAN WORK

5    SOMETHING OUT IN THIS CASE.  OKAY.

6          MS. HAYS:  OKAY.

7          THE COURT:  YOU'VE REQUESTED A SETTLEMENT.  THE CITY

8    IS TELLING ME THAT THEY'RE NOT GOING TO BRING ANYTHING TO THE

9    TABLE EXCEPT THE WAIVER OF COSTS.  I'M NOT GOING TO MAKE THEM

10   COME ACROSS THE STREET AND TELL ME THAT.

11         DO YOU UNDERSTAND?

12         (PAUSE IN PROCEEDINGS.)

13         THE COURT:  MS. HAYS?

14         MS. HAYS:  NO, I DON'T.

15         THE COURT:  ALL RIGHT.  YOU KNOW WHAT, I HAVE TO GO

16   RIGHT NOW.  WE'RE GOING TO HAVE TO DEAL WITH THIS SETTLEMENT

17   ISSUE AT ANOTHER TIME.

18         MS. GREENWOOD:  I WILL TRY AND EXPLAIN TO HER WHEN I

19   -- WHEN I HEAD OUT THERE.

20         THE COURT:  THANK YOU.

21         ALL RIGHT.  I'M GOING TO LET YOU GO, COUNSEL.  THANKS

22   FOR YOUR TIME.

23         MS. GREENWOOD:  THANK YOU.

24         MS. GARNER:  THANK YOU, YOUR HONOR.

25         THE COURT:  THANKS, MRS. HAYS.

50

1           MS. HAYS:  OKAY.

2           THE COURT:  ALL RIGHT.

3           (PROCEEDINGS ADJOURNED.)

4

5                  C E R T I F I C A T E

6

7           I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

8    FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE

9    ABOVE-ENTITLED MATTER.

10

11

12

13   /S/ DOROTHY BABYKIN                    6/27/14

14   _____       _____

15   FEDERALLY CERTIFIED TRANSCRIBER        DATED

16   DOROTHY BABYKIN

17

18

19

20

21

22

23

24

25